**RAYTHEON COMPANY, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. CIV.A.00–11184–PBS.**

United States District Court, D. Massachusetts.

Nov. 14, 2000.

Robert S. Sanoff, Foley, Hoag & Eliot, Boston, MA, for Plaintiff.

Joseph S. Sano, Prince, Lobel & Tye LLP, Boston, MA, for Defendant.

SARIS, District Judge.

I will adopt the Report and Recommendation. No objections were filed.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

The plaintiff, Raytheon Company ("Raytheon"), has brought suit against its comprehensive general liability insurer, Continental Casualty Company ("CNA"), relating to CNA's handling of Raytheon's demands for insurance coverage for approximately sixty (60) separate environmental claims. The complaint sounds in four counts: breach of contract (Count I), breach of implied covenant of good faith (Count II), unfair and bad faith settlement practices in violation of Mass. Gen. Laws ch. 93A and 176D (Count III), and declaratory judgment under Mass. Gen. Laws ch. 231A (Count IV). CNA has moved to dismiss the complaint for failure to state a claim upon which relief can be granted and for failure to join necessary and indispensable parties under Fed. R.Civ.P. 12(b)(6) and 12(b)(7), respectively. In the alternative, CNA has moved for a more definite statement under Fed. R.Civ.P. 12(e). For the reasons detailed below, this court recommends that the district judge to whom this case is assigned deny the motion.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and the plaintiff is to be given the benefit of all reasonable inferences. *See Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir.1999); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). Applying this standard to the instant case, the relevant facts are as follows:

From January 1, 1969 through at least April 1, 1990, CNA issued primary comprehensive general liability polices to Raytheon and its subsidiaries.[1] (Complaint at ¶ 3). By at least 1965, and continuing through April 1985, CNA issued to Raytheon excess comprehensive general liability policies as well. (*Id.* at ¶ 4). Each primary and excess insurance policy from

1. Raytheon did not attach the CNA polices to its complaint. CNA included unverified copies of the policies in connection with its motion to dismiss. Documents considered by the court which are not attached to the complaint often convert a Rule 12(b)(6) motion into a motion for summary judgment. Exceptions however are made "for documents sufficiently referred to in the complaint." *Watterson v.. Page*, 987 F.2d 1, 3 (1st Cir.1993). *Accord Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998) (when "complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document ... that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"). While the copies of the policies have not been authenticated, plaintiff has not objected to their use in connection with the motion to dismiss. Accordingly the court has considered these insurance policies without converting the motion into one for summary judgment.

1965 onward is individually identified in the complaint by its CNA policy number and the period of the policy. (*Id.* at ¶¶ 3–4).

Since the early 1980's, Raytheon has received notice of approximately 60 separate environmental claims ("Underlying Environmental Claims"), which "involve allegations of property damages resulting from an occurrence within the policy periods of the Policies and the Excess Policies." (*Id.* at ¶ 5). The location of each of these Underlying Environmental Claims is individually listed in the complaint along with the public or private entity asserting the claim. (*Id.* at ¶ 6). Raytheon provided CNA with timely notice of each of these claims. (*Id.* at ¶ 7).

By letter dated August 19, 1998, CNA agreed to pay Raytheon's defense costs under a reservation of rights with respect to eleven of the Underlying Environmental Claims. These claims have been specifically identified in the complaint. (*Id.* at ¶ 8). At the same time, CNA denied that it had a duty to defend with respect to nine other sites, and claimed that it could not make a coverage determination with respect to a number of other sites without more information. CNA has not provided any coverage position with respect to the other environmental claims. (*Id.*).

Despite acknowledging its duty to defend with respect to eleven sites, and despite having been provided with documentation of defense costs, CNA made no defense cost payments for over a year. (*Id.* at ¶ 9). When it finally made a payment in April 2000, it paid only a fraction of the $4 million owing for defense costs relating to the eleven sites. (*Id.* at ¶ 10). Moreover, CNA required that Raytheon submit copies of documents that had previously been provided to CNA, and made a unilateral determination as to its pro rata share of the defense costs. (*Id.*).

## The Complaint

In Count I for breach of contract, Raytheon alleges that each of the Underlying Environmental Claims "entails property damages resulting from an occurrence during the policy periods" of the policies and that it provided timely notice to CNA for each claim. (*Id.* at ¶¶ 11 and 12). Moreover, Raytheon alleges that CNA is obligated under one or more of its policies to provide Raytheon with a defense in connection with each of the Underlying Environmental Claims, and "to indemnify Raytheon with respect to all property damages incurred in connection with the Underlying Environmental Claims, at least up to the policy limits of the Policies and Excess Policies." (*Id.* at ¶¶ 13 and 14). Raytheon alleges that CNA breached its contracts by failing and refusing to pay the full cost of Raytheon's defense in all of the Underlying Environmental Claims and to indemnify Raytheon in connection with those claims, thereby causing Raytheon to suffer substantial injury and damage. (*Id.* at ¶¶ 15 and 16).

In Count II of its complaint, Raytheon asserts a claim for breach of an implied covenant of good faith. As Raytheon describes its claim:

In its conduct towards Raytheon to date, CNA has breached its duty of good faith and fair dealing, including without limitation its failure to make timely and full payment of defense costs with respect to claims where it has acknowledged a duty to defend, its failure to provide prompt coverage positions as to all of the Underlying Environmental Claims, and its failure to acknowledge defense and indemnity obligations as to each of the Underlying Environmental Claims.

(*Id.* at ¶ 19).

According to Count III of the complaint, the above-quoted conduct, along with other aspects of the manner in which CNA handled Raytheon's claims, violated Mass. Gen. Laws ch. 93A and 176D. Such unfair and bad faith settlement practices included, according to Raytheon:

the failure to act reasonably promptly upon communications with respect to claims arising under insurance polices, the failure to provide defense and/or indemnification for those claims which CNA has agreed to pay, the failure to provide promptly a reasonable explanation of the basis in the Policies in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement, the attempt to unilaterally pro-rate its joint and several duty to defend with respect to the Eleven Sites, and its repeated requests for copies of defense costs documentation long after such documentation has been provided.

(*Id.* at ¶ 23).

Finally, Raytheon is seeking a declaratory judgment under Mass. Gen. Laws ch. 231A (Count IV) for "a declaration of the rights of Raytheon and the obligations of CNA under the Policies and Excess Policies." (*Id.* at ¶ 29).

### *CNA's Motion*

CNA's motion presents three basic arguments. First, CNA contends that Raytheon is obligated to plead sufficient facts with respect to each individual Underlying Environmental Claim and each Policy so that it is able to establish from the complaint alone that there is coverage for each claim, and that no exclusions in the insurance policies apply. In particular, but without limitation, CNA contends that Raytheon has the burden of pleading that the "other insurance" and pollution exclusions do not bar coverage for each claim, and that the excess policies are likely to be reached. This argument, however, seeks to impose an undue burden on the plaintiff. In addition, it misconstrues the complaint. Raytheon's complaint is not limited to the issue of whether there is a duty to defend or coverage for each Underlying Claim. Rather, Raytheon also is challenging CNA's handling of its requests for coverage, including CNA's conduct with respect

to the eleven sites for which CNA agreed to provide a defense.

Second, CNA contends that Raytheon is obligated to name all other insurers who may have provided insurance for the claims as necessary parties. CNA does not know the identity of any such potential insurers. While CNA has raised arguments which could warrant dismissal at a later stage, it has not met its burden under Rule 12(b)(7) at this time. The motion to dismiss for failure to name unknown, potentially indispensable parties is premature.

Third, CNA contends that a more definite statement of Raytheon's claims is needed before it is able to file a responsive pleading. However, the information CNA is seeking is more appropriately obtained through discovery. The complaint is not so "vague or ambiguous" that CNA cannot frame a responsive pleading. Fed.R.Civ.P. 12(e).

### III. *DISCUSSION*

#### A. *The Rule 12(b)(6) Motion— Standard of Review*

CNA has moved to dismiss all counts of the complaint under Fed.R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss the court accepts as true all well-pleaded factual averments and draws all reasonable inferences in the plaintiff's favor. *Dartmouth Review*, 889 F.2d at 16. "Dismissal under Fed.R.Civ.P. 12(b)(6) is only appropriate, if the complaint, so viewed, presents no set of facts justifying recovery." *Cooperman*, 171 F.3d at 46; *Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957).

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Plaintiffs

only are obliged to set forth in their complaint "factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). The Rules "do not require a claimant to set out in detail the facts upon which he bases his claims." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (internal citation omitted). "[T]he issue is not whether the plaintiff will ultimately prevail, but whether that party is entitled to offer evidence to support its claims." *Day v. Fallon Community Health Plan, Inc.,* 917 F.Supp. 72, 75 (D.Mass.1996).

### 1. *The Overall Sufficiency Of The Complaint*

■ As an initial matter, CNA contends that the allegations of the complaint are too general, and that more details are needed regarding each specific Underlying Environmental Claim and the policy under which coverage is being sought to sustain the claims asserted. This challenge relates solely to Raytheon's claim that CNA wrongfully refused to provide a defense or to indemnify it with respect to certain of the Underlying Environmental Claims, and to CNA's defense that there is no coverage under the policies for such environmental claims. CNA does not dispute that the complaint sufficiently states claims relating to CNA's methods in responding to Raytheon's demands for coverage and relating to its payment, or lack thereof, for defense costs for the eleven sites for which it agreed to provide coverage. Consequently, the motion to dismiss can be denied for this reason alone. *See Cooperman,* 171 F.3d at 46 (dismissal appropriate only if complaint presents no set of facts supporting recovery).

■ Furthermore, the allegations of the complaint are sufficient to state a claim in connection with CNA's failure to provide coverage. "In general, the same pleading criteria established by the federal rules for other civil actions apply to insurance cases." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1243 (Civil 2d 1990 & Supplement 2000). Thus, while a plaintiff "has the burden of pleading that he has a right to recover under the terms of the policy," "technical precision in the complaint is not necessary." *Id.* Similarly, a general allegation of compliance with all conditions precedent of an insurance policy is sufficient. *Id. See* Fed.R.Civ.P. 9(c) ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred.").

In the present case, Raytheon has sufficiently identified the policies at issue by number and coverage period, has specified the environmental sites for which it has demanded coverage, and has named the parties asserting the Underlying Environmental Claim. *See Down East Energy Corp. v. Niagara Fire Ins. Co.,* 176 F.3d 7, 12 (1st Cir.1999) (complaint in coverage dispute against insurance company providing the number of the policy sufficiently stated an estoppel theory with respect to an endorsement even though endorsement not specifically mentioned). In addition, Raytheon has alleged that the Underlying Environmental Claims are covered under the policies, that CNA was obligated to defend and indemnify Raytheon under the policies, that Raytheon provided CNA with timely notice of the claims, and that CNA failed to meet its defense and indemnification obligations thereby causing Raytheon harm. Accordingly, the material elements necessary to sustain recovery under the breach of contract claim have been sufficiently alleged. *Compare Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194–195 (1st Cir. 1996) (breach of contract claim dismissed where plaintiff failed to identify the terms of the contract, the parties' obligations under the contract, that the plaintiffs were ready to perform or that defendants'

breach prevented their performance).[2] For these reasons, the motion to dismiss should be denied.

### 2. The "Super Escape" Clause

■ CNA further claims that the complaint must be dismissed because Raytheon cannot establish that it is entitled to coverage in view of an "other insurance" provision in the policies which it terms a "super escape" clause. That provision provides:

This insurance does not apply ... to the extent that any other valid and collectable insurance is available to the insured, whether on a contributory, excess or escape basis or otherwise, but the exclusion does not apply to insurance specifically purchased to apply in excess hereof.

Thus, CNA argues that Raytheon is required to allege that there was no other insurance available for the Underlying Environmental Claims because the existence of any other insurance excuses CNA's coverage under its policies.

The short answer to CNA's claim is that while there may be policy provisions and facts which would support a summary judgment ruling later on, these "facts" do not have to be included in the complaint.

**2.** CNA claims that the complaint fails to provide details about the terms of the contracts, the type and extent of property damage, the owner of the property, and the years involved. Such facts are clearly not necessary to put CNA on notice about the claims being asserted. In addition, CNA objects because Raytheon has not alleged that all of the claims for which it is seeking coverage involve lawsuits against Raytheon. Consequently, according to CNA, it does not have any duty to defend those claims. As an initial matter, the duty to defend is not limited solely to lawsuits. *See Hazen Paper Co. v. U.S. Fidelity & Guar. Co.,* 407 Mass. 689, 555 N.E.2d 576, 581 (1990). In addition, the level of detail CNA is demanding goes beyond the notice requirements of the Rules.

**3.** The fact that this provision is found in the "conditions" section instead of the "exclusion" section of the 1974 primary policy may not affect the burden of proof. *See Andover*

Therefore, their absence does not justify dismissal.

■ Although many courts have found these "super escape" clauses to be valid, Raytheon is not required to plead that other insurance is not available to state a claim for breach of contract. An insurer denying coverage under a policy has the burden of proving its affirmative defenses. *McGinnis v. Aetna Life & Cas. Co.,* 398 Mass. 37, 494 N.E.2d 1322, 1323 (1986); *see also* 5 Wright & Miller, *supra,* § 1276 (plaintiff's anticipation of an affirmative defense is improper pleading). Thus, all the insured needs to establish is that there was damage sustained within the ambit of the policy. The burden then shifts to the insurer "to prove a defense to coverage, say the applicability of a policy exclusion or the insured's failure to comply with conditions precedent." *United States Liab. Ins. Co. v. Selman,* 70 F.3d 684, 688 (1st Cir.1995).

Assuming the unverified policies submitted by CNA are, in fact, applicable, the "super escape clause" is a separate exclusion within the primary policies issued in 1969 and 1971, and is a separate "condition" in the 1974 policy.[3] Consequently, the burden is on CNA to allege and prove the applicability of this exclusion. *Id.;*

*Newton Theological School, Inc. v. Continental Cas. Co.,* 964 F.2d 1237, 1242–43 (1st Cir.1992) ("If an insurer were able to distribute provisions limiting liability throughout a policy, with the expectation that its shouldering the burden of proof would be limited to the single section entitled, "Exclusions," this would create considerable incentive to obfuscation and subterfuge."). *See also Home Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 229 F.3d 56, 62–63 (1st Cir. 2000) (refusing to have location of "other insurance" clauses control in determining priorities of two policies because such an approach "would tend to encourage insurers to jockey for best position in choosing where to locate 'other insurance' language...."). In any event, even assuming *arguendo* that the "condition" of "other insurance" is a condition precedent, the burden is on the insurer to prove a failure to comply either with a condition precedent or an exclusion.

*Hanover Ins. Co. v. Talhouni,* 413 Mass. 781, 604 N.E.2d 689, 692 (1992) ("the insurer must show the applicability of the clause excluding coverage . . . ."). *Camp Dresser & McKee, Inc. v. Home Ins. Co.,* 30 Mass.App.Ct. 318, 568 N.E.2d 631, 633 (Mass.1991) ("insurer has burden in all cases, including declaratory judgment actions, to prove the applicability of any exclusion to coverage set forth outside of the insuring clause.") and cases cited. *Accord Andover Newton Theological Sch.,* 964 F.2d at 1242–1243.

■ Finally, CNA spends much time arguing the enforceability of the "super escape" clause found in its policies and contends that it is a straightforward analysis—either there is "other insurance" thereby relieving CNA of any obligations or there is no other insurance and CNA may be liable. Not only is this analysis not necessary at this stage in the proceeding, but it is not as straightforward as CNA contends. The existence of a super escape clause does not automatically relieve the insurer of coverage obligations even if there is other insurance.[4] Rather, the coverage determination will depend on the facts of the case, including the precise terms of all relevant policies. *See, e.g., United States Fidelity & Guar. Co. v. Hanover Ins. Co.,* 417 Mass. 651, 632 N.E.2d 402, 403–404 (1994) (discussing different ways of resolving conflicts between excess clause and super escape clauses in insurance policies); Jeffrey W. Stempel, *Law of Insurance Contract Disputes* § 13.03, at 13–10 (2d ed.1999). Thus, Raytheon's failure to plead the absence of other insurance does not require the dismissal of the complaint.

### 3. *Pollution Exclusions*

CNA contends that claims arising under all policies from 1971 through 1985 must be dismissed because they are excluded under the terms of the policies. In particular, CNA asserts that all policies from April 1, 1971 to April 1, 1985 exclude environmental damage except for that caused by a "sudden and accidental" "discharge, dispersal, release or escape" and that after April 1, 1985 the policies contain an "absolute pollution exclusion." Therefore, according to CNA, all "environmental claims" under all policies but the 1969 policy must be dismissed.

The decision as to whether there is coverage under any given policy is not that simple, and may require a detailed analysis of the facts regarding the alleged cause of pollution, the years the pollution existed, which policy period(s) are involved, and whether the primary or excess policy is at issue, among other things. Such a level of detail exceeds any requirement of notice pleading.[5]

Moreover, all of the pollution clauses are "exclusions" from coverage. As discussed above, CNA has the burden of showing the applicability of the clauses. *See Highlands Ins. Co. v. Aerovox Inc.,* 424 Mass. 226, 676 N.E.2d 801, 804–805 (1997) (insurer has the initial burden of demonstrating that a pollution exclusion clause applies negating coverage, after which the insured has the burden of proving that the release is sudden and accidental). Whether either

---

4. In fact, by its terms, the provision is only relevant if there is other "valid and collectible insurance" not just any insurance which may provide coverage. Moreover, the escape clause "does not apply to insurance specifically purchased to apply in excess hereof" which may include CNA's excess policies. These issues are more appropriately determined by way of summary judgment or trial. *See, e.g., Aetna Cas. & Sur. Co. v. Home Ins. Co.,* 44 Mass.App.Ct. 218, 689 N.E.2d 1355 (1998) (conflicting coverage of two policies decided on cross-motions for summary judgment).

5. Perhaps the clearest evidence that the coverage issue is not as simple as CNA now contends can be found in the fact that with respect to eleven sites CNA did agree to provide a defense, albeit under a reservation of rights. That conduct defeats CNA's present position that under no set of facts could it be obligated to provide a defense in light of the provisions of the policies.

party will be able to meet their burden is better resolved at a later stage in the proceeding. *See id.* at 805–806 (issue whether discharge was sudden and accidental decided by way of motion for summary judgment).

#### 4. *Excess Insurance*

■ CNA contends that the claims relating to the excess policies should be dismissed because Raytheon has not alleged that the primary policies have been exhausted. Thus, according to CNA, Raytheon has not met the "actual controversy" requirement of a declaratory judgment action. However, Raytheon has alleged that CNA is obligated to pay "at least up to the policy limits of the Policies and Excess Policies." (Complaint at ¶ 13). At this stage, the complaint sufficiently details the dispute as to the parties' rights and obligations to withstand a motion to dismiss.

■ It is true, as CNA contends, that declaratory judgment under Mass. Gen. Laws ch. 231A "is a vehicle for resolving actual, not hypothetical, controversies, with the declaration issued intending to have an immediate impact on the rights of the parties." *Quincy City Hosp. v. Rate Setting Comm'n,* 406 Mass. 431, 548 N.E.2d 869, 874 (1990). "However, the declaratory judgment statute is to be construed and applied liberally to afford relief from uncertainty with respect to rights in issue." *Id.* and cases cited. Issues of coverage under insurance policies, including questions concerning the meaning of language in an insurance policy, are often decided by means of a declaratory judgment action. *See Thattil v. Dominican Sisters of Charity of Presentation of Blessed Virgin, Inc.,* 415 Mass. 381, 613 N.E.2d 908, 910 n. 6 (1993).

As an initial matter, Raytheon has alleged a sufficient controversy about CNA's conduct with respect to the claims for which it agreed to provide a defense to

support the claim for a declaratory judgment. For this reason alone, the motion to dismiss should be denied. In addition, the complaint is sufficient to state a claim for a declaration regarding coverage under the excess policies.

In determining whether a declaratory judgment should issue with respect to parties' rights and obligations under an excess policy of insurance, there is no need for "absolute proof" that the excess policy will be reached, the plaintiff must just show a "reasonable likelihood that the claims will mature as to that defendant." *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.,* 623 A.2d 1133, 1137 (Del.Super.Ct.1992). This is generally a fact-based analysis. For example, in *Hoechst Celanese Corp. v. Liberty Mut. Ins. Co.,* No. 90–4369, 1999 WL 20522, at *2 (Mass.Super.Ct. Nov. 24, 1998), relied on by CNA, the court was required to decide the justiciability of a claim where an excess insurer's liability depended upon a future contingency, the exhaustion of underlying policies. Only after reviewing the discovery record did the court find that there was no reasonable likelihood that the excess policy would be reached in the foreseeable future. *Id.* at *3. Accordingly that court granted summary judgment due to the absence of an "actual controversy." [6] *Id. Certain Underwriters at Lloyd's v. St. Joe Minerals Corp.,* 90 F.3d 671, 676 (2d Cir.1996), also relied upon by CNA, does not compel a different result. There, the court upheld the dismissal of a declaratory action brought by excess insurers for environmental cleanup costs which was determined to be "not a justiciable and ripe controversy." In reaching this decision, the court considered evidence as to whether the triggering of the excess policies was a "mere possibility or a 'practical likelihood.'" *Id.* at 675, internal citations omitted. In *Lloyd's,* significantly, the insurers

---

6. Although the motion before the court in *Hoechst Celanese* was labeled as a motion to dismiss, the court considered the motion as one for summary judgment since it looked

beyond the complaint and considered evidence from the discovery record. *See Hoechst Celanse,* 1999 WL 20522, at *1, n. 2.

were the plaintiffs and the *insured* took the position that the dispute was not ready for adjudication and that its liability would not reach the levels of the excess policies. Moreover, the parties apparently submitted substantial evidence on the issue of the excess insurer's potential liability. *E.g., id.* at 673–674 (discussion of EPA reports, evidence of potential costs, evidence of legal defenses and the like).

In the present case, the insured has alleged that the excess policies are relevant to the instant dispute, and that CNA has breached its obligations under the excess policies. Moreover, CNA is not only an excess insurer, but is also a primary insurer. Consequently, an actual controversy exists between the two parties regarding the primary policies and proceeding with discovery will determine whether Raytheon is "reasonably likely" to reach the excess polices. For these reasons, the motion to dismiss should be denied.[7]

### 5. *Implied Covenant of Good Faith and Unfair and Deceptive Practices*

CNA claims that since Raytheon has failed to allege sufficiently that CNA had a duty to pay defense and indemnity claims, it cannot be found to have breached its implied obligation of good faith and fair dealing, or to have committed an unfair or deceptive trade practice. This claim must fail since, as detailed above, the allegations of the complaint are sufficient to state a claim for breach of contract with respect to defense and indemnity costs.

 Moreover, CNA is ignoring the allegations of the complaint to the effect that there are eleven sites for which CNA did agree to provide a defense, and that it then failed to do so. With respect to those sites, CNA admitted that it had a duty to pay defense costs, and the allegation that it failed to fulfill its duties supports Ray-

theon's bad faith claims. *See Warner Ins. Co. v. Commissioner of Ins.*, 406 Mass. 354, 548 N.E.2d 188, 193, n. 9 (1990) and cases cited (every contract includes an implied obligation of good faith and fair dealing between the parties).

 Even if CNA is ultimately correct in its denial of coverage for the remaining environmental claims, it may still be liable under the deceptive trade practice statutes for its alleged dilatory actions regarding the handling of the claim. "An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G.L. c. 93A." *Gulezian v. Lincoln Ins. Co.*, 399 Mass. 606, 506 N.E.2d 123, 127 (1987); *see also Boston Symphony Orchestra v. Commercial Union Ins. Co.*, 406 Mass. 7, 545 N.E.2d 1156, 1160 (1989) (an insurance company which incorrectly disclaims coverage may not have violated 93A if the denial was not unreasonable, nor in bad faith, or for ulterior motives). However, " 'unlikely' does not mean 'never.' " *Commercial Union Ins. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir.2000). In *Seven Provinces*, the court found that a reinsurer's conduct of raising multiple, shifting defenses while never coming to a decision about coverage in an effort to force settlement of the reinsured's claims, causing great expense to the reinsured, "had the extortionate quality that marks a 93A violation." *Id.* at 43. In the present case, Raytheon has alleged that CNA failed to act reasonably promptly upon communications with respect to claims arising under the insurance policies, failed to promptly provide a reasonable explanation of the basis for the denial of Raytheon's claims under the policies, and repeatedly asked for the same information. Thus, Raytheon

---

**7.** Along the same lines, CNA seeks dismissal of the complaint because of an alleged failure to plead that Raytheon paid its self-retention obligations. There is no self retention obligation under the 1969 policy and the amounts of the retention in the other policies vary over the years. Again, while these details may eventually support a motion for summary judgment, their absence does not support a motion to dismiss.

has stated a claim under Counts II and III of the complaint.

## B. *Failure to Join Necessary Parties*

CNA also argues that Raytheon's claims under the primary and excess policies must be dismissed under Fed.R.Civ.P. 12(b)(7) for failure to join necessary parties. CNA asserts that all other insurers who potentially provide coverage for Raytheon's environmental claims are necessary parties. In order to determine whether there is coverage under CNA's primary policies which include the "super escape" clause, CNA contends that the court must determine whether coverage from other insurance policies is available to Raytheon. Moreover, in order to determine whether the CNA excess policies apply, CNA contends that the court must analyze the obligations of any underlying insurers and determine whether that coverage has been exhausted. Without these unnamed parities, CNA argues, both Raytheon and CNA will be subject to inconsistent obligations and the rights of these other unnamed insurers may be affected.

Dismissal under Rule 12(b)(7) is governed by Rule 19 of the Federal Rules of Civil Procedure.[8] "First, Rule 19(a) is applied to determine whether the absent party is conditionally necessary and therefore to be joined if feasible. Second, if joinder of that party would destroy diversity jurisdiction, Rule 19(b) is invoked to determine whether, in equity and good conscience, the action should be dismissed because that party is indispensable." *City of Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159, 162 (D.Colo.1990). *Accord Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 134 (1st Cir. 1989). The analysis under Rule 19 is fact specific. *See Rhone–Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir.1995)

(a Rule 19 determination depends on the circumstances of the case).

Under a motion pursuant to Rule 12(b)(7), the moving party carries the burden of showing why an absent party should be joined. *Rand v. Bath Iron Works Corp.*, No. 99–227–P–C, 2000 WL 760730, at *2 (D.Me. Mar.21, 2000), *citing* 5A Charles Alan Wright & Arthur R. Miller, *supra,* § 1359. In meeting its burden, the moving party may present, and the court may consider, evidence outside of the pleadings. *Id. See Purvis v. Hamwi,* 828 F.Supp. 1479, 1488 (D.Colo.1993) ("[A] motion to dismiss for failure to join an indispensable party is premature absent discovery"); Fed.R.Civ.P. 19 advisory committee's note ("relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced"). A "Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action." 5A Wright & Miller, *supra,* § 1359.

CNA has failed to meet its burden at this time. It has not provided any evidence as to the identity of any of the allegedly unnamed parties, much less whether the joinder of such parties meet the other criteria of Rule 19. For this reason, the motion to dismiss should be denied.

This court recognizes that other courts have reached differing conclusions as to when an absent insurer is a necessary and indispensable party. For example, several courts have found that an absent primary insurer is not a necessary and indispensable party in relation to an already named primary insurer. *See Brinco Mining, Ltd. v. Fed. Ins. Co.*, 552 F.Supp. 1233, 1238–39

---

**8.** Similarly, under Mass. Gen. Laws ch. 231A, § 8, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be

affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

(D.D.C.1982) (although primary policy had "other insurance" clause the insured's other insurers were not necessary parties); *City of Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159, 162 (D.Colo.1990) (even though "other insurance" clauses may apply, each insurance contract with the primary insurer creates a separate obligation which can be construed separately in determining whether coverage applies); *Rhone–Poulenc, Inc. v. Int'l Ins. Co.*, No. 94–C–3303, 1996 WL 435180, at *5–9 (N.D.Ill. July 31, 1996) (absent primary insurers found not to be necessary and indispensable parties in action against primary insurer for breach of contract and declaration of insurance coverage obligations). On the other hand, other cases have concluded that a motion to dismiss is appropriate when all primary insurers are not named. *See, e.g., Schlumberger Indus. Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1286–1287(4th Cir.1994) (all insurers are necessary where insured could end up without full coverage even though it was legally entitled to full coverage).

Similarly, courts differ as to whether both primary and excess carriers are necessary parties. *See, e.g., City of Littleton*, 133 F.R.D. at 162–163 (in suit against excess carriers, absent primary insurers were necessary and indispensable parties); *Shell Oil Co. v. Aetna Cas. & Sur. Co.*, 158 F.R.D. 395, 399–404 (N.D.Ill.1994) (excess insurance carriers are necessary and indispensable parties); *But see Koppers Co. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175–176 (3d Cir.1998) (excess insurer is not a necessary party in suit against other excess insurers).

Since CNA has failed to even identify the potential necessary parties, its motion under Rule 12(b)(7) is premature at this time and should be denied.[9]

9. A denial of a Rule 12(b)(7) motion is without prejudice. 5A Wright & Miller, *supra*,

## C. *The Rule 12(e) Motion*

Finally, CNA contends that a more definite statement of Raytheon's claims is needed before it is able to file a responsive pleading. *See* Fed.R.Civ.P. 12(e). CNA seeks more detailed statements regarding the terms and conditions of the contracts Raytheon relies upon, identification for each occurrence and the amount of damages relating to that occurrence, whether underlying insurance is exhausted, whether other insurance exists, and whether any of the releases were sudden and accidental.

"While defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading." *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 72–73 (1st Cir.2000). It is only if the complaint " 'is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading,' " that a more definite statement is needed. *Id.* at 74, n. 6 quoting Fed.R.Civ.P. 12(e).

The degree of detail sought by CNA exceeds pleading requirements and is information that can be obtained through discovery. As already detailed above, Raytheon has alleged sufficient facts to put CNA on notice of the claims against it. Thus, CNA's motion for a more definite statement should be denied.

## CONCLUSION

For all the reasons detailed herein, this court recommends that CNA's Motion to Dismiss or in the Alternative for a More Definite Statement be denied.[10]

Oct. 18, 2000.

§ 1359. Thus, CNA can renew the motion if discovery warrants a renewed request.

10. The parties are hereby advised that under

the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4–5 (1st Cir.1998).