**JURIMEX KOMMERZ TRANSIT G.M.B.H., Jurimex Kommerz Transit Agrar Consulting Projekt Kas G.m.b.H., and Arge IPC–Jurimex, Plaintiffs,**

v.

**CASE CORPORATION, Defendant.**

**No. CIV.A. 00–83–JJF.**

United States District Court,
D. Delaware.

July 23, 2001.

Thomas C. Grimm, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Plaintiffs.

David C. McBride, Esquire, and John W. Shaw, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: William D. Deitrick, Esquire, and Robert M. Dow, Jr., Esquire of Mayer, Brown & Platt, Chicago, Illinois, for Defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Defendant Case Corporation's Motion to Dismiss (D.I.13). For the reasons stated below, the Court will grant the motion.

## BACKGROUND

Plaintiff Jurimex Kommerz Transit G.m.b.H. ("Jurimex") is an Austrian corporation that brokers deals involving commodities and machinery "between business concerns in Eastern Europe and the former Soviet Union, and trade counterparts in Western Europe and the United States." Specifically, Jurimex specializes in handling the bureaucratic and regulatory bodies in Eastern Europe and the Soviet Union that govern the logistics of the above-described trade. Defendant Case Corporation is a Delaware corporation that manufactures agricultural machinery.

In their Complaint, Plaintiffs allege that in April 1999, Defendant sought to obtain Jurimex's assistance in brokering a sale of combines to a company in the Republic of Kazakhstan called Agro Industrial Corporation Golden Grain, Ltd. ("Golden Grain"). A company called I P Consult ("IPC") was already acting as Defendant's representative in Kazakhstan, but had no experience in the grain trade or with large transactions in Kazakhstan, and Defendant specifically requested that Jurimex assist IPC with the pending transaction with Golden Grain ("The Transaction"). On May 4, 1999, representatives of Defendant, Jurimex, and IPC met in Jurimex's offices in Vienna, Austria, at which the three entities reached a business agreement. Specifically, IPC agreed to handle the

"technical" aspect of the Transaction relating to the equipment, and Jurimex agreed to handle the "agricultural" aspect, i.e., the purchasing of wheat in order to finance the Transaction. Golden Grain representatives then joined the meeting, which shifted focus to Jurimex's role in marketing Golden Grain's wheat output by locating potential buyers ("offtakers").

After the meeting, Defendant requested that Jurimex conduct a project study for the machinery and a feasibility study on the exportation of Golden Grain's wheat in Kazakhstan. Defendant also promised Jurimex that Jurimex would act its representative in Kazakhstan and would be responsible for financing the Transaction.

Jurimex then formed Jurimex Kommerz Transit Agrar Consulting Projekt KAS, G.m.b.H. ("Jurimex Projekt"), an Austrian corporation, in order to form an Austrian partnership with IPC. This partnership, Arge IPC–Jurimex ("IPC–Jurimex"), was created in order to negotiate with Golden Grain on behalf of Defendant.

At a May 26, 1999 meeting in Paris between representatives of Defendant, Jurimex, and IPC, the parties agreed upon the financial aspects of the Transaction. Specifically, the Transaction was expected to produce $40 million in revenues, $23.2 million of which would go to Defendant, with the remaining $16.8 million to be used for freight costs and to compensate IPC–Jurimex. Defendant also instructed Jurimex to continue negotiating with Golden Grain and Golden Grain's bank, and to continue seeking to obtain offtakers.

On June 2, 1999, a meeting was held at which Defendant and Jurimex agreed that representatives from IPC–Jurimex would travel to Kazakhstan to secure a written contract for sale between Defendant and Golden Grain. Meanwhile, both Defendant and Jurimex continued to seek financing.

However, Defendant and IPC held a secret meeting with a bank that had expressed interest in financing the Transaction as well as with Glencore Grain ("Glencore"), an offtaker obtained by Jurimex, at which it was agreed that the Transaction would be with Defendant directly, not with Plaintiffs, and that Jurimex would be excluded from the future sale of Golden Grain's wheat to Glencore. Ultimately, the Transaction was completed without Plaintiffs' involvement, thus depriving them of over $7.5 million in proceeds owed to them from the Transaction, as well as their estimated $28 million share of the proceeds from the wheat sales that were arranged and finalized by Jurimex. Defendant also reneged on its promise to Jurimex to make it one of Defendant's representatives in Kazakhstan, thus depriving it of substantial future business.

Jurimex, Jurimex Projekt, and IPC–Jurimex ("Plaintiffs") filed this lawsuit on February 9, 2000 against Defendant, asserting claims for (1) breach of contract and implied covenant of good faith and fair dealing, (2) breach of implied contract, (3) promissory estoppel, (4) quasi-contract/unjust enrichment/restitution, (5) tortious interference, (6) unfair competition and misappropriation, and (7) prima facie tort. (D.I.1). Defendant filed the instant motion to dismiss on April 14, 2000 pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(7), and 19, and the doctrine of forum non conveniens. (D.I.13).

## STANDARD OF REVIEW

A complaint should be dismissed if a plaintiff fails to join a party pursuant to Rule 19 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(7). Under Rule 19(a), a person is a necessary party to the litigation if: (1) complete relief is not obtainable if the person is not joined, or (2) the person claims an interest in the subject of the litigation and resolution of the litigation without the person's involvement would (i) impair or impede the person's ability to protect the interest or (ii) leave the current parties with a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

Under Rule 19(b), if a person fitting the description in Rule 19(a) cannot be joined, the court must determine whether the litigation should proceed without said person or whether said person is an "indispensable" party requiring dismissal of the action. In

making this determination, the court must consider four factors:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

FED. R. CIV. P. 19(b).

■ When making a Rule 19 determination, the Court may consider evidence outside of the pleadings. *Raytheon Co. v. Continental Cas. Co.*, 123 F.Supp.2d 22, 32 (D.Mass.2000); *A & M Gregos, Inc. v. Robertory*, 384 F.Supp. 187, 193, 194 n. 16 (E.D.Pa. 1974)(same).

## DISCUSSION

Defendant contends that every interaction to which Plaintiffs refer in their Complaint were with Defendant's foreign subsidiaries Case France and Case Europe ("the Subsidiaries"), and not Defendant. (D.I. 14 at 8)(citing D.I. 15). Therefore, Defendant contends that the Subsidiaries are necessary parties under Rule 19(a), but that they cannot be joined because they would destroy the basis of the Court's diversity jurisdiction, so the Court should dismiss the action under Rule 12(b)(1), Rule 12(b)(7) and Rule 19.

The Court concludes that Defendant has submitted sufficient evidence to infer that most of Plaintiffs' interactions and negotiations regarding the Transaction were with the Subsidiaries and not with Defendant.[1] Plaintiffs do not seriously contest this conclusion, but rather, argue that the Subsidiaries acted as agents for Defendant with respect to the Transaction.[2] (D.I. 18). Therefore, the Court concludes for purposes of this motion

that most of Plaintiffs' interactions were with the Subsidiaries.

■ Based on this evidence, the Court agrees with Defendant that Plaintiffs' Complaint must be dismissed under Rule 12(b)(7) and Rule 19. Generally, when a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19. *See, e.g., Polanco v. H.B. Fuller Co.*, 941 F.Supp. 1512, 1520–22 (D.Minn.1996)(collecting cases and holding that subsidiary was an indispensable party). The instant case provides no reason to vary from this general principle.

■ First, the Subsidiaries are necessary parties under Rule 19(a) because Plaintiffs' interactions were almost entirely with the Subsidiaries and not with Defendant. *See Japan Petroleum Co. (Nigeria), Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831, 836 (D.Del.1978)(holding that when subsidiary, not parent, signed a contract, the subsidiary may be the only party liable for the obligations under the contract and is therefore a necessary party under Rule 19(a)).

Second, joining the Subsidiaries would eliminate the basis of this Court's diversity jurisdiction and warrant dismissal of the action under Rule 12(b)(1). *See Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 626–27 (7th Cir.1998)(citing cases for the principle that diversity does not exist when a resident of the United States and a foreign entity constitute one party and the opposing party is all foreign entities).

■ Finally, the Court concludes that the factors under Rule 19(b) advise against allowing this litigation to proceed without the Subsidiaries being joined. A judgment against Defendant would undoubtedly prejudice the Subsidiaries, whose conduct is largely at issue in this case. The Court fails to see how a judgment in this litigation could be rendered that would avoid this prejudice if the Subsidiaries were not joined. A judgment in Defendant's favor would not be "ade-

---

1. This evidence includes the affidavit of Stephane Kieffer, who is the contract manager for Case France, and the attached documentary exhibits. (D.I. 15).

2. Whether or not Plaintiffs adequately allege the basis of this principal-agent relationship is discussed below.

quate" because Plaintiffs could subsequently sue the Subsidiaries in a different forum based on essentially the same facts, while a judgment in Plaintiffs' favor may be "hollow" because the proper defendant was never joined. Furthermore, Plaintiffs do not deny that ·this litigation could proceed with all of the necessary parties in Paris, France, among other foreign forums.[3] Therefore, in sum, the Court concludes that Plaintiffs' Complaint must be dismissed under Rule 19(b).

Plaintiffs do not expressly challenge any of the principles discussed above. Rather, they contend that the Subsidiaries are not necessary parties under Rule 19(a), or in the alternative, that the Rule 19(b) factors do not warrant dismissal of Plaintiffs' Complaint, because Plaintiffs are suing Defendant for their own conduct as a joint tortfeasor and under a theory of vicarious liability for the acts of its Subsidiaries under a principal-agent theory. (D.I. 17 at 13). The Court is aware of cases holding that an agent or a joint tortfeasor does not need to be joined under Rule 19. However, Plaintiffs' Complaint contains no allegations that Defendant is liable due to a principal-agent relationship with its Subsidiaries or under a joint tortfeasor theory, and it even fails to mention the existence of the Subsidiaries, or the Subsidiaries' involvement in the Transaction. Therefore, Plaintiffs' contentions that an agent or joint tortfeasor need not be joined under Rule 19 are irrelevant. *See, e.g., Lachmund v. ADM Investor Servs., Inc.,* 191 F.3d 777, 782–83 (7th Cir.1999)(suggesting that a principal-agent relationship must be alleged in the complaint); *Rankin v. City of Philadelphia,* 963 F.Supp. 463, 471–72 (E.D.Pa.1997)(same). If Plaintiffs seek to hold Defendant liable under a principal-agent or joint tortfeasor theory, they must so al-

lege in their Complaint.[4] *See Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000)(recognizing the difference between a facial challenge, which attacks the sufficiency of a complaint's allegations setting forth the court's jurisdiction, with a factual challenge, which attacks the factual basis for a complaint's allegations regarding jurisdiction).

### CONCLUSION

For the reasons discussed, the Court concludes that Plaintiffs have failed to join indispensable parties, and that, therefore, Defendant's motion to· dismiss should be granted.

An appropriate Order will be entered.

---

**3.** Plaintiffs do argue that a conclusion that an alternative forum, i.e., Paris, is available is based on the erroneous assumption that the Subsidiaries, not Defendant, are the proper parties in this action. (D.I. 17 at 26–27). However, as discussed above, Defendant has presented sufficient evidence to conclude that most of the interactions regarding the Transaction were between Plaintiffs and the Subsidiaries. As discussed below, therefore, absent express allegations of a principal-agent relationship, the Subsidiaries are the proper parties to this action.

**4.** Plaintiffs contend that it would be premature to dismiss the Complaint due to a lack of subject matter jurisdiction prior to· allowing some initial discovery as to the relationship between Defendant and its Subsidiaries. (D.I. 17 at 27). This argument lacks merit, however, because prior to allowing said discovery, Plaintiffs must first allege in their Complaint that the Subsidiaries were involved in the transaction, and that a principal-agent relationship existed.