AMERICAN ECONOMY INSURANCE COMPANY, Plaintiff/Respondent,

v.

Charles OTTE, Mark Otte, and David Otte, Defendants/Appellants.

No. 63591.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 30, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 20, 1994.

Application to Transfer Denied
Feb. 22, 1994.

Stephen F. Meyerkord, Jonathan E. Fortman, Casey & Meyerkord, St. Louis, for defendants, appellants.

Albert C. Lowes, David J. Roth, Lowes & Drusch, Cape Girardeau, for plaintiff, respondent.

REINHARD, Judge.

Plaintiff sought a declaratory judgment to determine whether its garage liability insurance policy, issued to David Otte, afforded coverage for an accident which occurred while Charles Otte was driving David Otte's dune buggy. The trial court declared the policy provided no coverage for the accident. Charles Otte appeals. We affirm.

David Otte was the sole owner and proprietor of "Dave's Radiator Repair Shop" in St. Marys, Missouri. The business consisted of radiator repair, minor engine repair, welding, and farm tractor repair. In early 1989, he bought, for $200.00, a dune buggy which had been constructed from a Volkswagen chassis. David was dissatisfied with the buggy's handling and, therefore, modified the buggy by extending the buggy's wheel base. This involved welding additional framework onto the chassis. He then attempted to sell the vehicle.

On January 23, 1990, Charles Otte, David's cousin, contacted David to discuss purchasing the buggy. Charles, accompanied by David's brother Mark, took the vehicle for a test drive. During the test drive, one of the welds made by David allegedly broke, and the front end of the vehicle disengaged from the rest of the chassis. Charles was thrown from the vehicle and injured. He filed suit against David, alleging his injuries had occurred "as a direct and proximate result of the carelessness and negligence of [David]" in modifying the dune buggy.

David, at the time of the accident, had garage liability insurance with plaintiff. David asked plaintiff to defend him in the suit by Charles. Plaintiff filed this declaratory judgment action seeking a declaration that David's garage liability policy provided no coverage for the injuries sustained in the accident and a declaration that it had no duty to defend any lawsuit arising from the accident. After a hearing, the trial court entered judgment in favor of plaintiff,[1] concluding: ". . . that defendant David Otte does not have coverage for the underlying case under plaintiff's policy because such coverage was not purchased; that the policy by its own terms is not applicable to the accident as alleged; and that plaintiff, American Economy Insurance Company, owes no duty of coverage of any kind to defendant David Otte . . . arising out of or related to this particular accident."

In his sole point on appeal, Charles asserts that "the trial court erred in entering judgment in favor of plaintiff in that the modification was an operation 'necessary or incidental' to the garage business of David Otte" and thus covered under the policy.

The garage insurance policy at issue consisted of three types of coverage: (1) Liability; (2) Medical Payments; and (3) Garagekeepers. The only coverage relevant in the instant case is the liability policy. The liability policy was further divided into " 'AUTO' ONLY" and "OTHER THAN 'AUTO' ONLY." The "GARAGE COVERAGE FORM", "SECTION II—LIABILITY COVERAGE", defined the extent of insurer's liability coverage:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations."

It is undisputed that, as defined by the policy, the dune buggy was an "auto", that David Otte was an "insured", and that Charles Otte was "bodily injured". The only issue, according to Charles, is whether the dune buggy modification by David was a garage operation within his policy's coverage. "SECTION IV–DEFINITIONS" provides:

> D. "Garage Operations" means the ownership, maintenance and use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage Operations" includes the ownership, maintenance or use of the "auto's" indicated in SECTION I of this coverage form as covered "autos." *Garage Operations also inlcude [sic] all operations necessary or incidental to a garage business.* (Emphasis added).

"SECTION I–COVERED AUTOS" states:

> ITEM TWO of the Declarations shows the "autos" which are covered "autos" for each of your coverages. . . . *The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."* (Emphasis added).

---

1. The court considered the depositions of Charles, David and Mark in addition to the policy.

"ITEM TWO—SCHEDULE OF COVER-AGES AND COVERED AUTOS" states:

THIS POLICY *PROVIDES ONLY THOSE COVERAGES WHERE A CHARGE IS SHOWN IN THE PREMI-UM COLUMN BELOW. EACH OF THESE COVERAGES WILL APPLY ONLY TO THOSE "AUTOS" SHOWN AS COVERED "AUTOS."* "AUTOS" ARE SHOWN AS COVERED "AUTOS" BY THE ENTRY OF ONE OR MORE OF THE SYMBOLS FROM THE COVERED AUTO SECTION OF THE GARAGE COVERAGE FORM NEXT TO THE NAME OF THE COVERAGES. *ENTRY OF A SYMBOL NEXT TO LIABILITY PROVIDES FOR COVERAGE FOR GA-RAGE OPERATIONS.* (Emphasis added).

David had ten options as to the type of coverage he preferred. The symbol entered next to liability here was "29." The number "29" meant that the garage liability for autos covered only "NON–OWNED 'AUTOS' USED IN YOUR GARAGE BUSINESS."[2] Charles contends that, notwithstanding the clear language limiting the policy's applicability for auto accidents to "covered 'autos' ", the dune buggy modification was "necessary or incidental" to David's garage business, and thus covered. He cites the established rule that where uncertainty or ambiguity exist in an insurance policy, it is to be construed against the insurer and in favor of coverage. *See Weathers v. Royal Indem. Co.,* 577 S.W.2d 623, 626 (Mo. banc 1979).

We have found no cases directly on point, but the Louisiana case of *Koo v. Parker,* 295 So.2d 463 (La.App.1974), and the Southern District case of *Universal Underwriters Ins. Co. v. Weber,* 701 S.W.2d 588 (Mo.App.1985), are somewhat similar in that the coverage covering the accidents could have been specifically purchased for an additional premium. In *Koo,* the insurance policy covered accidents " 'arising out of garage operations,

including only the automobile hazard for which insurance is afforded as indicated in the schedule....' " *Koo* 295 So.2d at 465. (Emphasis in original). The insured had the option of selecting "Automobile Hazard 1" coverage, which insured for liability arising out of the use of autos for the purposes of garage operations and the use of an auto owned by the insured under certain conditions, and/or "Automobile Hazard 2" coverage which covered use in connection with garage operations of any auto which is neither owned nor hired by the insured. The insured chose only "Automobile Hazard 2 coverage". The plaintiff in *Koo* was injured in an accident involving an owned auto of the insured. In rejecting the policy ambiguity argument advanced by the plaintiff, the court stated, *"[that] rule has no applicability here because the policy form, as constructed and completed, leaves no room for doubt as to the hazard for which a premium was charged and coverage thereby afforded."* *Koo,* 295 So.2d at 466. (Emphasis added).

In *Universal Underwriters,* the Southern District cited *Koo* in holding that coverage did not exist where the policy form contained provisions for many types of coverage and various endorsements whereby coverage could have been chosen, altered or amended, and the policy holder chose an option that did not cover the accident. *Id.* at 591–92.

■ We recognize that the established rule is to construe in favor of coverage, however, as noted in *Koo, supra,* that rule is inapplicable where the policy form clearly provides the insured an opportunity to obtain the specific coverage claimed for an additional premium. David Otte chose to pay an additional premium only for non-owned autos, and rejected payment of additional premiums for owned vehicles.[3]

■ We therefore agree with the trial court that the policy, by its terms, excluded coverage. Our function is not to rewrite a contract of insurance. Rather, it is our duty

2. "NON–OWNED 'AUTOS' USED IN YOUR GA-RAGE BUSINESS" means:
"[a]ny 'auto' you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes 'autos' owned by your employees or

partners or members of their households while used in your garage business."

3. This portion of the policy also provided for an opportunity to add vehicles after the effective date of the policy.

to interpret and enforce it as written. *Protective Cas. Ins. Co. v. Cook,* 734 S.W.2d 898, 908 (Mo.App.1987). We cannot construe the policy to provide coverage where it does not exist, and words must be given their plain and ordinary meaning. *Id.*

Judgment affirmed.

GARY M. GAERTNER, C.J., and CRIST, J., concur.