Aetna Casualty and Surety Company v. The Home Insurance Company.

AETNA CASUALTY AND SURETY COMPANY *vs.* THE HOME
INSURANCE COMPANY & another.[1]

No. 96-P-792.

Suffolk. December 3, 1997. - January 27, 1998.

Present: JACOBS, GILLERMAN, & SPINA, JJ.

*Insurance,* Motor vehicle insurance, Coverage, Insurer's obligation to defend,
Contribution among insurers. *Contract,* Insurance. *Contribution.*

In a declaratory judgment action brought by an insurance company that had
issued two business automobile liability policies, each with a limit of
$500,000, to two legally distinct entities that paid separate premiums, this
court held that the insurance company's aggregate limit of liability under
both policies for a claim involving a common named insured was
$1,000,000. [220-223]

In an action by an excess liability insurer seeking a declaration that another
excess liability insurer was required to contribute to a claim settlement, a
Superior Court judge correctly ruled that the "other insurance" clauses of
the two policies in issue were mutually repugnant, and thus both insurers
were required to pay the excess, in equal shares in the circumstances, up to
the limit of liability. [223-224]

In an action by a business automobile liability insurer, seeking recovery of
costs incurred in defending negligence claims arising out of an automobile
accident, against an insurer that issued a homeowners' policy covering the
same named insured, this court held that no recovery was warranted where
the allegations supporting the negligence action did not state a claim
covered by the homeowners' policy. [224-225]

CIVIL ACTION commenced in the Superior Court Department on
April 14, 1994.

The case was heard by *Charles F. Barrett,* J., on motions for
summary judgment.

*Kevin M. Truland* for the plaintiff.

*Eugene G. Coombs, Jr.,* for RLI Insurance Company.

*David R. DiCicco* for The Home Insurance Company.

[1]RLI Insurance Company.

GILLERMAN, J. This declaratory judgment action involves multiple insurance coverage issues. The facts are not in dispute. The underlying claims involved an auto accident in which two complaints were filed against Zee's Wallpaper to Go (Zee's) and Jodi Zitofsky (Jodi), the seventeen year old operator who allegedly drove through a red light causing a collision.[2] Zee's, a business owned by Jodi's parents, owned the automobile Jodi was driving at the time of the accident, a Mercury Sable station wagon (Mercury). Because Jodi was a minor at the time of the accident, the complaints in the underlying actions also named Jodi's parents as defendants and alleged negligent supervision and entrustment. The claims against the defendants in the underlying actions were settled by Aetna Casualty and Surety Co. (Aetna) for an aggregate amount of $1,215,000.

Aetna provided business automobile liability coverage for the automobile owned by Zee's through two business automobile liability policies, each with a $500,000 limit of liability. Both policies covered the same automobile driven by Jodi. One policy was purchased by Zee's, which is a franchisee of Wicks 'n Sticks (Wicks). The second policy, purchased by Wicks, contained a special endorsement providing coverage — as additional named insureds — to Wicks's 133 franchisees, including Zee's. The total premium for the policy owned by Zee's was $1,707. The total premium for the policy owned by Wicks was $16,328.

Thus, two policies, each with a limit of $500,000, and each covering the Mercury driven by Jodi, had been issued by Aetna in exchange for the payment of a premium by two legally distinct entities having separate interests — Zee's interest being that of the owner of the Mercury, and Wicks's interest being that of a franchisor of 133 businesses owning automobiles.

This case also involves excess liability insurance provided by Aetna to Zee's in the amount of $1,000,000 and by RLI Insurance Company (RLI) to Jodi's father[3] in the amount of $1,000,000. Finally, the case involves a primary homeowners' policy issued by The Home Insurance Company (Home) to Jodi's parents.

Aetna filed a declaratory judgment action in the Superior

---

[2] Jodi, Zee's, Jodi's parents, and the plaintiffs in the underlying actions were all named as defendants in the declaratory judgment action. They do not participate in the appeal.

[3] The RLI policy defines its insured to include Jodi.

Court seeking a declaration that the aggregate coverage available under Aetna's two automobile liability policies is limited to $500,000. In addition, Aetna sought a declaration that the limits of RLI's personal liability excess policy must be exhausted before any contribution is required of Aetna under its excess liability policy. Finally, Aetna sought the recovery of defense costs from Home under its homeowners' policy for accident-related claims based on negligent supervision.[4]

The judge entered an order on cross motions for summary judgment declaring that Aetna was required to pay the aggregate total of insurance available under both business automobile liability policies (i.e., $1,000,000). He also ruled that Aetna and RLI, as excess insurers, were required to share equally the excess settlement amount. Finally, as no settlement amount was attributable to the claims arising out of negligent supervision of the minor driver, the judge held that Home was not liable for any costs of defending the actions. RLI and Aetna both appealed from the judgment.

1. *Aetna's coverage limit.* The first question is whether Aetna's liability under the automobile liability policies issued to Zee's and Wicks is limited to $500,000, that being its maximum liability under either policy. In support of its argument that its liability is limited to $500,000, Aetna relies on a condition contained in both policies which states the following:

> "8. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US
>
> "If this Coverage Form *and* any other Coverage Form or policy *issued to you* by us or any company affiliated with us apply to the *same 'accident,'* the aggregate maximum Limit of Insurance under all the Coverage Forms or policies *shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.* This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form." (Emphasis added.)

---

[4]Traveler's Insurance Company provided personal automobile liability insurance to Jodi's parents. Although originally part of the suit, the Superior Court granted summary judgment to Traveler's. That portion of the judgment was not appealed.

Aetna construes the phrase in condition 8 — "issued to you" — to mean that where Aetna has "*issued* more than one policy to a *named insured*, the aggregate limit of liability under all policies shall not exceed the highest applicable limit under any one policy" (emphasis added). In the case at hand, Zee's is a named insured under both automobile policies. Since each. of the two policies contains a policy limit of $500,000, the argument continues, the highest applicable limit under any one policy is $500,000, and therefore the aggregate limit of liability under both policies may not exceed $500,000.

The argument is seriously flawed.[5] Aetna did not "issue" more than one policy to Zee's; Aetna "issued" one policy to Zee's and one policy to Wicks.[6] The person or entity to whom or which a policy is "issued" (i.e., the purchaser) is commonly, as here, a named insured, but each and every named insured — there are 133 named insureds in the Wicks policy — is neither the purchaser nor the entity to which the policy was "issued." See, e.g., *Sunrise Properties, Inc.* v. *Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 64-65 (1997) (policy "issued" to the professional corporation; the "insureds" under the policy included the professional corporation and any lawyers who were stockholders or members of the professional corporation).

That Zee's was a named insured under both policies (the linchpin of Aetna's argument) is true but, as to these circumstances, inconsequential. There is no language in condition 8 which calls for merging two policies issued to different entities merely because the two entities have a named insured in common.

Quite to the contrary, condition 8, properly construed, applies when Aetna (including any affiliate of Aetna) has issued more than one automobile liability policy to a *single owner*, and an automobile covered under more than one policy issued to the

---

[5]We reach the same result as the judge, but for different reasons. See *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734 (1992).

[6]It is true that the word "you" is defined in the policy to mean all named insureds, but the critical word in condition 8 is "issued," not "you." In the context of the phrase, "issued to you," the meaning of the word "you" is the person or entity to whom the policy is "issued" whether or not that person or entity is a named insured. But if the word "you," in the context just stated, is ambiguous, the meaning must be resolved against Aetna, the party responsible for writing the contract of insurance. See *Beatty* v. *NP Corp.*, 31 Mass. App. Ct. 606, 612 (1991).

single owner was involved in the "same [i.e., single] accident." The policy gives notice to the owner that, in such event, the limit of Aetna's liability is the highest limit available under any one policy issued to it. In this fashion, Aetna has effectively brought to the attention of the owner not to buy or pay for double coverage for a single risk.

We are reinforced in these conclusions by the fact that Zee's, as the owner of the vehicle involved in the accident, paid $1,707 to protect its ownership interests, and Wicks paid $16,328 to protect its separate interest as a franchisor of businesses whose continued financial stability is in the interest of Wicks. That the vehicle owned by Zee's is covered under two separate policies issued by Aetna to separate owners is merely a coincidence from the point of view of the two policy owners; Zee's and Wicks were each insuring their separate interests. Combining the two policies to yield the single coverage of $500,000, as Aetna proposes, would permit Aetna, without notice to the policy owners, to avoid covering one of the two risks it insured and thus to obtain a windfall of one of the two premiums paid to it. Compare *Carlino* v. *Lumbermens Mut. Cas. Co.*, 74 N.Y.2d 350, 357 (1989) (where two available policies contained a provision substantially the same as condition 8, the court held that both policies were collectible; the insurer's "construction of the policy [to limit its liability to a single policy] — which no insured could have envisioned, least of all one paying a full premium for a separate policy — should not be given effect").

If Aetna's underwriting choice is not to issue multiple policies to multiple owners covering the same vehicles — as can commonly occur in the event of franchise relationships — then Aetna, as the common insurer, is uniquely in a position to be aware of the duplicate coverage, and to avoid the undesired result. Without an appropriate condition or notice in the policy expressly defeating the undesired coverage, Aetna cannot shift to the policy owners the burden of discovering duplicate coverage by different entities.

Aetna's reliance on authority from other jurisdictions which limits stacking of either uninsured-underinsured motorist benefits or liability policies is misplaced. See *Shelter Mut. Ins. Co.* v. *Thompson*, 852 P.2d 459 (Colo. 1993); *Bishop* v. *Washington*, 331 Pa. Super. 387 (1984). These cases are not persuasive because the stacking of automobile insurance policies in Massachusetts is controlled by statute, G. L. c. 175,

§ 113L. It is the statute which prevents the stacking of uninsured-underinsured motorist benefits. See, e.g., *Santos* v. *Lumbermens Mut. Cas. Co.*, 408 Mass. 70, 76 n.7 (1990). There is no similar statutory provision which prevents stacking of two business automobile liability policies which apply to the same automobile.

Finally, the result we reach is consistent with the provisions of another condition in both policies. Condition 5.d provides that when there are two primary policies, as here, the insurer's share under each policy is the proportion that the limit of insurance provided by each policy ($500,000) bears to the total of the limits of all such policies ($1,000,000). Thus, each of the two primary policies (i.e., the policies Aetna issued to Zee's and to Wicks) must contribute $500,000 (one-half of $1,000,000), a total of $1,000,000.

2. *Excess liability policies.* There are two excess liability policies that the judge ruled applied to the underlying actions: the Aetna commercial excess liability umbrella insurance policy issued to Zee's and the RLI personal umbrella liability policy which provided excess coverage to Bernard Zitofsky and his relatives, a term defined in the policy to include Jodi.

Each policy contains language that Aetna and RLI each argues limits its contractual obligation to excess coverage over other collectible insurance. We agree with the judge that the "other insurance" clauses of the two policies, while differently worded, are substantively identical,[7] and therefore, as the judge ruled, mutually repugnant. Since Aetna and RLI are each an excess insurer in the same degree, both insurers must pay the excess settlement ($215,000) in equal shares up to the limit of liability, as the judge ordered. "Where policies each contain excess or escape clauses, they are declared mutually repugnant, and each insurer is required to contribute to the loss, for to give effect to both clauses would result in no coverage for the insured." *Mission Ins. Co.* v. *United States Fire Ins. Co.*, 401 Mass. 492, 496

---

[7]The Aetna policy provides: "OTHER INSURANCE. This insurance is excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributing, excess, contingent, *or otherwise*" (emphasis added).

The RLI policy provides: "Other insurance. There may be other collectible insurance, other than the Basic Policies, covering a claim which is also covered by this policy. If this occurs, the other insurance will pay first and this policy will be in excess of the other insurance."

n.4 (1988). Further, each insurer is required "to contribute equally until the policy with the lower limit is exhausted. Any remaining amounts due would be paid by the remaining insurer until its policy limit is also exhausted." *Id.* at 500.

3. *Costs of defense.* Aetna, which advanced the costs of defense, looks to Home and its homeowners' policy for reimbursement.[8] It is not disputed that Jodi's parents neither owned nor operated the motor vehicle involved in the collision, and thus the motor vehicle exclusion in the Home policy does not apply to *preclude* their claims for coverage regarding claims brought "because of bodily injury or property damage . . . ."

As to whether the Home policy provides the coverage which Aetna seeks to reach, we look first to Home's duty to defend under its policy. Certain principles are settled. An insurer's "duty to defend is broader than its duty to indemnify. An insurer must indemnify its insured when a judgment within the policy coverage is rendered against that insured . . . . The obligation of an insurer to defend is not, and cannot be, determined by reference to the facts proven at trial. Rather, the duty to defend is based on the facts alleged in the complaint . . . . The question then becomes whether the allegations of the complaint 'state or adumbrate a claim covered by the policy terms.' " *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989) (citation omitted). *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983).

Paragraph 13 of the complaint in the declaratory judgment action alleges that the injuries suffered by the plaintiffs in the underlying action "were proximately caused by the negligence of . . . [Jodi's parents] in the supervision of their daughter, Jodi . . . ." The "manifest design of homeowners' insurance is to protect homeowners from risks associated with the home and activities related to the home." *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240, 245 (1986). Thus, in *Marnell*, a case involving the claim of negligent supervision by the parents of

---

[8]Aetna makes this claim based on a theory of "equitable subrogation," but cites no relevant case in support of that theory. See *Polaroid Corp.* v. *The Travelers Indem. Co.*, 414 Mass. 747, 762 n.19 (1993) ("An obligation to indemnify does not automatically follow from the existence of a duty to defend"). Nevertheless, because of the result we reach, we will assume that the theory is available to Aetna.

the operator of a motor vehicle in the underlying action, the court held that there was coverage because the complaint contained specific allegations that the negligent failure of the parents to prevent their son from drinking and driving were "alleged to have taken place within the . . . home [of the parents]." *Ibid.*

There are no such allegations in this complaint and none which, even if liberally read, suggest that the alleged negligent supervision related to the home of Jodi's parents. We conclude that Home did not fail in its duty to defend Jodi's parents, and therefore Aetna was not entitled to any contribution from Home.

*Judgment affirmed.*