# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3241

_____

Reeva Whitworth Lindsay, surviving    *

spouse of John Whitworth, deceased;    *

John Whitworth, Jr., surviving son of    *

John Whitworth, deceased;    *

   *

      Appellants,    *    Appeal From the United States

   *    District Court for the

    v.    *    Eastern District of Missouri.

   *

Safeco Insurance Company of    *

America; OneBeacon Insurance    *

Company, formerly known as    *

Hawkeye Insurance Company;    *

   *

      Appellees.   

_____

Submitted: March 15, 2006
Filed: May 17, 2006

_____

Before COLLOTON, HEANEY, and GRUENDER, Circuit Judges.

_____

HEANEY, Circuit Judge.

Reeva Whitworth Lindsay appeals the district court's[1] summary judgment grant in favor of Safeco Insurance Company and OneBeacon Insurance Company in this

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

declaratory action. The district court concluded that coverage did not exist under the liability policies issued by the insurers. We affirm.

## BACKGROUND

On December 3, 1996, John Whitworth was killed while driving an all terrain vehicle (ATV) he intended to purchase from Guy Westmoreland. Whitworth was driving the ATV home to obtain the purchase money when the ATV's brakes failed and he was struck by a tractor trailer. Guy Westmoreland had displayed the ATV for sale at his automobile repair shop, Guy Westmoreland's Auto Service. Prior to her husband's death, Lindsay and Whitworth had purchased one vehicle and test driven another that Guy Westmoreland had displayed for sale at his repair shop. The ATV was not owned by the repair shop, but had been originally purchased by Guy Westmoreland for personal use at his family farm. Bronnie Westmoreland was not involved in the sale of the ATV and did not know it was for sale or how long it had been at the repair shop.

Whitworth's widow, Reeva Lindsay, brought a wrongful death suit against Guy and Bronnie Westmoreland, d/b/a Guy Westmoreland's Auto Service, in Missouri state court. On October 7, 2002, the state court entered a default judgment on Lindsay's behalf in the amount of $3 million. Lindsay subsequently filed this declaratory judgment action to recover proceeds from liability policies issued by Safeco and OneBeacon to Westmoreland Service, Inc. and Guy Westmoreland's Auto Service, respectively.

Westmoreland Service, Inc. is controlled by Guy Westmoreland's parents, Louis and Joyce Westmoreland, and is a distinct and separate entity from Guy Westmoreland's Auto Service. Neither Guy Westmoreland's Auto Service, nor Guy or Bronnie Westmoreland, owned any interest in Westmoreland Service. At the time of the accident, Westmoreland Service, Inc. owned real property located at 6018 and

6020 North Broadway in St. Louis, Missouri. Westmoreland Service operated a convenience store at 6018 and leased the 6020 property to Guy Westmoreland, where he operated his automobile repair garage.

Westmoreland Service was not a party to the wrongful death suit. The Safeco policy listed "Westmoreland Auto Service" as the insured. It listed the type of business covered as a grocery store and self-service station and listed the insured's address as 6018 North Broadway for the effective period that covered the date of the accident. On October 22, 1996, commercial auto coverage was deleted from the Safeco policy.

The OneBeacon policy listed the insured as Guy Westmoreland and the insured's address as 6020 N. Broadway. The type of business listed was noted as "REPAIR SHOP-MAJOR." The OneBeacon policy provided coverage for liability resulting from the use of vehicles "specifically described" in the policy and non-owned vehicles used in the garage business. Safeco and OneBeacon separately moved for summary judgment. Both insurers alleged that the policies issued to Westmoreland Service and Guy Westmoreland's Auto Service, respectively, did not provide coverage for the damages awarded in the wrongful death suit. The district court granted both motions, and Lindsay appeals.

## DISCUSSION

"We review the district court's grant of summary judgment de novo," viewing the facts in the light most favorable to the non-moving party. Grabovac v. Allstate Ins. Co., 426 F.3d 951, 955 (8th Cir. 2005). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We apply Missouri substantive law in this diversity case and review the district court's application of

Missouri law and contract interpretation de novo.  <u>Freeman v. State Farm Mut. Auto. Ins. Co.</u>, 436 F.3d 1033, 1034-35 (8th Cir. 2006).

Unambiguous insurance contract terms are given their plain meaning and enforced as written, while ambiguous terms are construed against the insurer.  <u>Rice v. Fire Ins. Exch.</u>, 946 S.W.2d 40, 42 (Mo. Ct. App. 1997).  Determination of whether insurance contract language is ambiguous is a question of law.  <u>Id.</u>  A term is ambiguous if it is subject to "duplicity, indistinctness or uncertainty."  <u>Mo. Employers Mut. Ins. Co. v. Nichols</u>, 149 S.W.3d 617, 625 (Mo. App. Ct. 2004).  Mere disagreement by the parties regarding a contract term's interpretation does not render the term ambiguous.  <u>Id.</u>  "A court may not create an ambiguity in order to distort the language of an unambiguous policy, or in order to enforce a particular construction which it might feel is more appropriate."  <u>Rice</u>, 946 S.W.2d at 44.  In order to prove that coverage exists, Lindsay must establish "issuance and delivery of the policy of insurance, payment of the premium, a loss caused by a peril insured against, notice of loss and proof of the loss to the insurer as required by the terms of the policy." <u>Kauble v. MFA Mut. Ins. Co.</u>, 637 S.W.2d 831, 832-33 (Mo. Ct. App. 1982).

**The Safeco Policy**

The Safeco policy listed the insured as "Westmoreland Auto Service," and the insured's address as 6018 N. Broadway, Saint Louis, Missouri  (J.A. Vol. II at 172, 174.)  Safeco moved for summary judgment on the basis that it issued the policy to the property owner, Westmoreland Service, Inc., not to Guy or Bronnie Westmoreland, or Guy Westmoreland's Auto Service. Lindsay presented no evidence that Guy Westmoreland's Auto Service was the actual insured or paid the premiums on the policy.  Rather, Lindsay argues that the similarity in the name of the insured and Guy Westmoreland's Auto Service creates an ambiguity in the insurance contract that should be construed against the insurer according to the rules of construction.

-4-

As the district court correctly noted, the policy, considered in its entirety, illustrates that the insured was a convenience store, operated by Westmoreland Service at 6018 N. Broadway, not the repair shop operated by Guy Westmoreland at 6020 N. Broadway. See Rice, 946 S.W.2d at 42 (contract interpretation requires consideration of the contract as a whole.). Accordingly, the Safeco policy is unambiguous and we enforce it as written. Guy Westmoreland's Auto Service was not the insured, and therefore is not entitled to liability coverage under the policy.

Additionally, at the time of the accident, no commercial auto coverage existed under the Safeco policy. Thus, even if we construed the policy to list Guy Westmoreland's Auto Service as the insured, the policy did not provide coverage for injuries related to vehicles owned by the insured. The district court correctly concluded that Safeco was entitled to summary judgment as a matter of law, because the Safeco policy did not provide coverage for the type of loss sustained.

**The OneBeacon Policy**

Guy Westmoreland was the named insured in the OneBeacon policy. Nonetheless, in order to recover the proceeds under the OneBeacon policy, Lindsay must show that policy provided coverage for the loss sustained. See Kauble, 637 S.W.2d at 832-33. The OneBeacon policy provided liability coverage for bodily injury or property damage "resulting from 'garage operations' other than ownership, maintenance or use of 'covered autos.'" (J.A. Vol. I at 129.) The policy defined "garage operations" as:

> the ownership, maintenance or use of locations for garage business and
> that portion of the roads or other accesses that adjoin these locations.
> "Garage operations" includes the ownership, maintenance or use of

-5-

"autos" indicated in SECTION I of this Coverage Form as covered "autos." "Garage operations" also include all operations <u>necessary or incidental</u> to a garage business.

(<u>Id.</u> at 155 (emphasis added).)

Lindsay argues that since Guy Westmoreland allegedly sold vehicles from the repair shop on a regular basis, the sale of those vehicles was necessary or incidental to the garage operations. Determining whether this accident arose out of garage operations requires consideration of the circumstances of the case "and whether it can be said to be a natural and necessary incident or consequence of the operation of the service station even though not a foreseen or expected consequence of that operation." <u>State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co. of Tulsa, OK</u>, 378 S.W.2d 232, 236 (Mo. Ct. App. 1964) (considering coverage exclusion in a personal automobile policy for accidents "arising out of the operation of a service station"). Several courts have considered what is "necessary and incidental" to a garage business. <u>See, e.g.,</u> <u>Rhinehart v. Anderson</u>, 985 S.W.2d 363, 370 (Mo. Ct. App. 1998) (concluding that evidence that the vehicle involved in the accident was being used for garage-related trips was sufficient to survive summary judgment); <u>Am. Econ. Ins. Co. v. Otte</u>, 869 S.W.2d 179, 181 (Mo. Ct. App. 1993) (holding that garage owner's sale of vehicle involved in accident was insufficient to show that it was necessary and incidental to garage operations, especially in light of the fact that the garage owner declined to purchase coverage that specifically covered vehicles held out for sale); <u>see also</u> <u>United Fire & Cas. Co. v. N.H. Ins. Co.</u>, 684 F. Supp. 1030, 1032-33 (W.D. Mo. 1988) (finding that delivery of vehicle, by detailing company employee, to car dealership was necessary and incidental to detailing company's business, not to the garage operations of the dealership); <u>Farmers Alliance Mut. Ins. Co. v. Reeves</u>, 775 P.2d 84, 86 (Col. Ct. App. 1989) (holding that accident was covered because the vehicle involved in the accident was at the garage to be repaired); <u>Lonergan v. Nationwide Mut. Ins. Co.</u>, 663 A.2d 480, 484 (Del. Super. Ct. 1995) (finding that where vehicle was used for garage business use and personal use, coverage did not

extend to accident that occurred during personal use); Am. Hardware Mut. Ins. Co. v. Darv's Motor Sport's, Inc., 427 N.W.2d 715, 717-18 (Minn. Ct. App. 1998) (concluding that promotional use of insured-owned motorcycle was necessary or incidental to motorcycle sales and repair business).

Lindsay cites Rhinehart in support of her claim that the OneBeacon policy provided coverage under the garage operations exception. Rhinehart also involved a wrongful death suit plaintiff attempting to collect damages from a garage owner/defendant's insurance company under the "garage operations" clause of the insurance contract. 985 S.W.2d at 365. The similarities to this case, however, end there. In Rhinehart, the garage owner was driving the vehicle at the time of the accident and using the vehicle for garage-related tasks. Id. at 370. Here, the vehicle was a personal vehicle displayed for sale on the repair shop premises, and Lindsay presented no evidence that Westmoreland used the ATV for garage business.

We find the Otte case from Missouri directly on point. In Otte, an individual was injured while test driving a dune buggy owned by a repair shop owner. 869 S.W.2d at 180. The dune buggy was not used for garage-related purposes. Id. The garage owner claimed that the injuries were covered under the garage operations clause in his liability insurance policy, because modifications made to the dune buggy by the garage owner were "necessary or incidental" to his garage operations. Id. The garage owner alleged that "necessary or incidental" language was ambiguous and should be construed in favor of coverage. The Otte court rejected the garage owner's argument because he declined to purchase available coverage that would have covered the accident. Id. "We recognize that the established rule is to construe in favor of coverage, however, . . . that rule is inapplicable where the policy form clearly provides the insured an opportunity to obtain the specific coverage claimed for an additional premium." Id. at 181.

The OneBeacon policy includes an option to purchase coverage of liabilities related to "DEALERS 'AUTOS' AND 'AUTOS' HELD FOR SALE BY NON-DEALERS." (J.A. Vol. I at 128.) The corresponding number for that type of coverage, "31," is not listed on the declarations page of the policy. (Id. at 121-22.) Accordingly, though available, this coverage was not part of the policy at the time of the accident.

Finally, there is nothing in the record connecting the ATV in question to the vehicle repair operations performed by Guy Westmoreland's Auto Service. The evidence presented by Lindsay illustrates, at most, that Guy Westmoreland was attempting to expand his auto repair service to also deal in used vehicles. If this is the case, the "dealer" insurance coverage offered by OneBeacon would have covered the accident. Unfortunately, Westmoreland chose to not purchase this coverage. Accordingly, the district court correctly concluded that the OneBeacon policy did not provide coverage for the losses here.

## CONCLUSION

For the above stated reasons, the grant of summary judgment in favor of Safeco and OneBeacon is affirmed.

_____