Curran, Dennis J., J.
This declaratory judgment action was filed to resolve an insurance coverage dispute between United National Insurance Company (“United National”), an excess carrier, and Providence Washington Insurance Company (“Providence Washington”) , a primary carrier. The coverage dispute arises out of a wrongful death action involving the estate of David Cadrin (“Cadrin”) and multiple defendants, including Cadrin’s employer, T.S. Truck Service (“T.S.”), and Trans-Spec Truck Service, Inc. (“Trans-Spec”), the owner of the truck involved in the accident that caused Cadrin’s death. The parties settled the underlying action on November 2, 2005 for $2.6 million. Both United National, subrogated to the rights of its insured, Trans-Spec, and Providence Washington seek summary judgment. For the following reasons, United National’s motion for summary judgment is ALLOWED IN PART and DENIED IN PART and Providence Washington’s cross motion for summary judgment is DENIED IN PART and ALLOWED IN PART.
BACKGROUND
The following facts are undisputed.
On December 17, 2001, Cadrin, an employee of T.S., was killed in an accident in a garage located at 22 Eskow Road in Worcester, Massachusetts. The accident occurred when Cadrin attempted to weld an air eliminator valve to a truck owned by Trans-Spec. Cadrin initially hesitated to perform the welding job because he thought that he smelled gasoline from the truck. Joseph Howard (“Howard”), simultaneously the president of Trans-Spec and also the general manager of T.S., however, mistakenly insisted that the truck had never been used to transport gasoline. In fact, the truck had been used to transport gasoline. Thus, after Cadrin started welding, a horrific explosion occurred. The explosion caused serious burns to Cadrin and ultimately cost him his life.
Cadrin’s estate filed a lawsuit against Trans-Spec and other defendants, alleging negligence and wrongful death.[1] At the time of the accident, Trans-Spec was insured by three liability policies: (1) a commercial automobile insurance policy issued by Providence Washington (the “auto policy’’);[2] (2) a garage policy issued by Providence Washington (the “garage policy”);[3] and (3) an excess liability policy issued by United National (the “excess policy”).[4]
The garage policy issued to Trans-Spec describes Trans-Spec as a “Repair Shop - Non Dealer.” The declarations page states that the policy “provides only those coverages where a charge is shown in the premium column below.” In addition, “(e]ach of these *237 coverages will apply only to those ‘autos’ shown as covered ‘autos.’ ” The declarations page shows that Trans-Spec paid for numerous coverages, including coverage for “Other Than Covered ‘Autos’ Liability.’’ Within this coverage, Trans-Spec paid to cover four categories of “covered autos” and provided a limit of $1,000,000 per each accident and $3,000,000 in the aggregate. In exchange for the “Other Than Covered ‘Autos’ Liability” coverage, Trans-Spec paid $773. The estimated total premium for the entire policy was $26,034.
According to the declarations page, the four categories of autos covered under “Other Than Covered ‘Autos’ Liability” are #27, #28, #29, and #32. Howard, as president of Trans-Spec, chose these four categories.

SECTION 1'- COVERED “AUTOS"

27 = SPECIFICALLY DESCRIBED “AUTOS.” Only those “autos” described in ITEM SIX of the Declarations for which a premium charge is shown (and for Liability Coverage any “trailers” you don’t own while attached to a power unit described in ITEM SIX).
28 = HIRED “AUTOS” ONLY. Only those “autos” you lease, hire, rent or borrow. This does not include any “auto” you lease, hire, rent or borrow from any of your “employees” or partners or members of their households.

29 = NON-OWNED “AUTOS” USED IN YOUR GARAGE BUSINESS. Any “auto” you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes “autos” owned by your “employees” or partners (if you are a partnership), members (if you are a limited liability company), or members of their households while used in your garage business.

32 = Any “auto” while used with a dealer or repair plate issued to you by the Massachusetts Registry of Motor Vehicles.
Section I — Covered “Autos.” Garage Policy, Abate Aff., Exhibit 1, Bates No. 33.
The policy contains a provision titled, “ ‘Garage Operations’ - Other Than Covered ‘Autos,’ ” that provides in pertinent part:

[Providence Washington] will pay all sums an “insured" legally must pay as damages because of “bodily injury” or “property damage” to which this insurance applies, caused by an “accident” and resulting from “garage operations” other than the ownership, maintenance or use of covered “autos.”

[Providence Washington has] the right and duty to defend any “insured” against a “suit” asking for these damages even if it is without merit. However, we have no duty to defend any “insured” against a “suit” for “bodily injury” or “property damage” not covered by this policy. We may investigate and settle any claim or “suit” as we consider appropriate . . . [Providence Washington's duty to defend ends when we tender, or pay to any claimant or to a court of competent jurisdiction, with the court’s permission, the maximum amount of the Liability Coverage Limit of Insurance - “Garage Operations” - Other Than Covered “Autos.”
Section IV - Liability Coverage, “ ‘Garage Operations’ - Other Than Covered ‘Autos.’ ” Garage Policy, Abate Aff., Exhibit 1, Bates No. 37.
The policy defines an “insured” for “garage operations” other than covered “autos” as the owner of the policy. “Garage operations” means “the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations.” In addition, “garage operations” also includes “all operations necessary or incidental to a garage business.” “Garage business” is not explicitly defined in the policy. The parties agree that the garage where the accident occurred is listed as a “location where [Trans-Spec] conduces] garage operations” under the garage policy.[5] The parties additionally agree that the truck involved in the accident is not a “covered auto” under categories 27, 28, 29, and 32.
The garage policy also contained a so-called “anti-stacking” provision which provides:
If this policy and any other policy issued to you by us or any company affiliated with us apply to the same “accident,” the aggregate maximum Limit of Insurance under all the policies shall not exceed the highest applicable Limit of Insurance under any one policy.
Section VIII — Garage Conditions, #8 - Two or More or Policies Issued by Us. Garage Policy, Abate Aff., Exhibit 1, Bates No. 52.
On November 2, 2005, the Cadrin estate settled and released further claims against Trans-Spec in exchange for $2.6 million.[6] The settlement proceeds paid on Trans-Spec’s behalf to Cadrin’s estate included (1) $1 million by Providence Washington under the auto policy; (2) $1.6 million by United National under the excess policy; and (3) no money by Providence Washington under the garage policy. During settlement of the underlying dispute, Providence Washington defended Trans-Spec under the business automobile policy. Providence Washington did not, however, defend or pay Trans-Spec under the garage policy.
Under the express terms of the Settlement Agreement and Release, United National secured a right to seek recovery from Providence Washington under Trans-Spec’s garage policy. Counsel for United National and Providence Washington stipulated that United National could pursue the instant declaratory judgment action without a formal assignment of rights to United National by Trans-Spec. By this motion, United National seeks (1) a declaration that Providence Washington owed Trans-Spec coverage under the ga *238 rage policy, (2) payment of $1 million from Providence Washington, the limits of the garage policy, and (3) payment of reasonable attorneys fees and costs.
DISCUSSION
I. SUMMARY JUDGMENT STANDARD
This Court grants summary judgment where there are no genuine issues as to any material fact and where the moving party is entitled to summary judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of the case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
II. THE GARAGE POLICY
A. Equitable Subrogation
“The general rule is that an excess insurer has a claim based on equitable subrogation but no right to a direct action against the primary insurer.” Hartford Casualty Insurance Co. v. New Hampshire Insurance Co., 417 Mass. 115, 124 n.7 (1994). Both parties agree that United National is entitled to pursue only the rights of the insured and no more. First State Insurance Co. v. Utica Mutual Insurance Co., 870 F.Sup. 1168, 1175 (D.Mass. 1994), aff'd, 78 F.3d 577 (1st Cir. 1996). See Hartford Casualty Insurance Co., 417 Mass. at 124 n.7 (allowing equitable subrogation action by excess carrier against primary carrier). Damages in an equitable subrogation action are measured by the difference between the amount an excess insurer would have paid to a settlement that was unreasonably refused by the primary insurer and the amount paid. See Massachusetts Liability Insurance Manual, Section 7.3.1(c) (MCLE 2004), citing Seaman & Kittridge, Excess Liability Insurance, Law and Litigation, 32 Tort & Ins. L.J. No. 3, 653, 703 (1997).
Here, United National seeks payment of $1 million from Providence Washington, representing the difference between what United National paid ($1.6 million), and what it would have paid ($600,000) in settlement to Trans-Spec had Providence Washington not refused coverage under the garage policy. Providence Washington argues, however, that United National cannot now claim there was coverage where Trans-Spec had no expectation of coverage. This Court rejects that argument because Providence Washington offers no factual basis for it. Providence Washington is correct to point out that Trans-Spec did not purchase garage policy coverage for the vehicle involved in the accident. There is no indication at all in the record, however, that Trans-Spec expected or intended that there be no coverage for an accident occurring at a covered location during the performance of “garage operations.”
B. Garage Policy Coverage
The primary issue in this case is whether the garage policy’s “ ‘Garage Operations’ - Other Than Covered ‘Autos’ ” provision provides coverage for an accident at a location where “garage operations” occur, but involves a vehicle that the parties stipulate is not listed as a “covered auto" under the “Other Than Covered ‘Autos’ Liability” coverage on the policy’s declarations page. United National claims that Providence Washington owed Trans-Spec coverage under the “ ‘Garage Operations’ - Other Than Covered ‘Autos’ ” provision of the garage policy because: (1) Trans-Spec was a named insured on the policy; (2) the Eskow Road garage is an insured location on the policy; (3) Cadrin suffered “bodily injury” while performing “garage operations” at the insured location; and (4) no policy exclusion operates to bar coverage. Providence Washington maintains that it owes Trans-Spec no coverage under the garage policy because the accident (1) involved a truck that was not listed on the policy in the “other than covered ‘autos’ liability” declaration and (2) did not arise out of “garage operations” necessary and incidental to Trans-Spec’s business.
Construing an insurance contract is a question of law appropriate for summaiyjudgment. Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982). When free from ambiguity, the provisions of an insurance contract “must be given [their] usual and ordinary meaning.” Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997). When “there is more than one rational interpretation” of the language, “the insured is entitled to the benefit of the one that is more favorable to it.” IcL, quoting Trustees of Tufts University v. Commercial Union Insurance Co., 415 Mass. 844, 849 (1993). In making a coverage determination, courts may consider “what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” Hakim, 424 Mass. at 282 (citations omitted).
There are no Massachusetts appellate decisions interpreting the “ ‘Garage Operations’ - Other Than Covered ‘Autos’ ” provision in circumstances similar to those present here. Instead, United National relies on cases where courts in other jurisdictions in similar circumstances have found coverage under garage policies. See Farmers Alliance Mutual Insurance Co. v. Reeves, 775 P.2d 84, 86 (Colo.Ct.App. 1989) (concluding that “liability coverage under the policy is not limited to accidents involving covered "autos" where the accident results from “garage operations” at a location used for “garage business’’); Rinehart v. Anderson, 985 S.W.2d 363 (Mo.Ct.App. 1998). In Rine-hart a woman was killed when she was struck by a vehicle driven by the insured while the insured and his employee were delivering a repaired vehicle to its *239 owner. Rinehart, 985 S.W.2d at 365. The Rinehart court decided whether an “other than covered autos” provision with identical language to the one at issue here provided coverage when the accident involved an auto not covered by the policy. Id. at 367. The court concluded that the accident was covered under the policy even though the insured did not specifically purchase insurance for the auto involved in the accident because “the policy provided separately stated coverage for garage operations not fitting within the definition of covered autos[.]” Id. at 369, n.2.
In resisting coverage, Providence Washington refers this Court to another Missouri case, American Economy Insurance Company v. Otte, 869 S.W.2d 179 (Mo.App.Ct. 1993). In Otte, the court concluded that “where the policy form clearly provides the insured an opportuniiy to obtain the specific coverage claimed for an additional premium” the general rule of construing a policy in favor of coverage does not apply. Id. at 181. As the court in Rinehart noted, however, the insurance policy at issue in Otte did not have an “other than covered auto liability” provision identical to the provision in Rinehart and at issue here. See Rinehart, 985 S.W.2d at 369, n.2.
This Court is persuaded by the reasoning of Rinehart and concludes that the language of the garage policy creates at least an ambiguity to be construed in favor of coverage for United National. See Hakim, 424 Mass. at 281. In adopting the Rinehart approach, this Court recognizes that the analogy is not perfect. The vexing aspect of Providence Washington’s garage policy is that, on the declarations page, the “other than covered ‘autos’ liability” coverage covers certain categories of “covered autos.” Yet, in further defining “other than covered autos liability,” the policy provides coverage for “accidents” arising out of “garage operations” involving “other than covered autos” and including “all operations necessary or incidental to a garage business.” (Emphasis added.) Thus, the fact remains that, like the policy in Rinehart and unlike the policy in Otte, the policy at issue here provides separately stated coverage for garage operations not involving covered autos.
An objectively reasonable insured in this case would expect coverage given the broad language defining the terms of the declarations page. See Hakim, 424 Mass. at 282. There can be no reasonable dispute that Cadrin’s function as a welder was “necessary or incidental” to the garage business at Eskow Road because trucks were routinely brought there for maintenance, including welding, and Cadrin routinely welded and otherwise worked at that location as a welder. Furthermore, the garage where the accident occurred is listed as a “location where [Trans-Spec] conduces] garage operations” under the garage policy. Thus, the accident is covered as “garage operations" regardless of the fact that the accident involved a non-covered auto. As the court explained in Rinehart “if a non-covered auto is used in an operation necessary or incidental to the garage business, it would be reasonable for an insured to believe that it comes within this coverage provision.” Rinehart, 985 S.W.2d at 368.
Furthermore, had Providence Washington wanted to limit the scope of the “other than covered ‘auto’ liability” to include only those accidents involving either covered autos or no autos (i.e., non-auto related claims arising out of “garage operations”), Providence Washington could have and should have so written the policy. For example, as suggested by the court in Rinehart, Providence Washington could instead label the provision, “Garage Operations - Other Than Any Auto.” It is not for this Court to rewrite an insurance contract, but it is this Court’s responsibility to resolve ambiguities in favor of the insured. See Hakim 424 Mass. at 281. This Court concludes that Trans-Spec, and thus United National, was entitled to coverage under the garage policy.
C. Anti-Stacking Provisions
The next issue is whether, as Providence Washington contends, the so-called anti-stacking provisions contained in both the garage policy and the auto policy nevertheless bar coverage under the garage policy for this accident. The provision states:
If this policy and any other policy issued to you by us or any company affiliated with us apply to the same “accident” the aggregate maximum Limit of Insurance under all the policies shall not exceed the highest applicable Limit of Insurance under any one policy.
Section VII - 8. Two or More or Policies Issued by Us, Abate Aff., Exhibit 1, Bates No. 52. According to the policy, “you” refers to the “Named Insured shown in the Declarations.” Abate Aff., Exhibit 1, Bates No. 33. Providence Washington argues that this provision bars coverage here because: (1) there are two policies issued to [Trans-Spec] by [Providence Washington]," and (2) both the garage policy and the auto policy apply to the same “accident.” United National counters that the provision does not bar coverage because: (1) Trans-Spec is an additional insured, not a named insured on the auto policy, and (2) the two policies were “issued” to different entities. Alternatively, United National asserts that the provision is ambiguous and should be construed against Providence Washington.
This anti-stacking provision does not operate to bar coverage under the garage policy here because the auto policy and the garage policy were not issued to the same legal entity. See Aetna Casualty & Surety Comp. v. Home Insurance Comp., 44 Mass.App.Ct. 218, 221 (1998). In Aetna, the court resolved an insurance coverage dispute in the aftermath of an accident involving a vehicle covered by two separate automobile liability policies. Id. at 219. Both the owner of the vehicle, Zee’s Wallpaper to Go (“Zee’s”), and Wicks ‘n Sticks (“Wicks”), owned insurance policies that covered the vehicle. Id. Zee's was listed as an additional insured on the Wicks policy because Zee’s was one of 133 franchisees of Wicks. Id. In concluding that the anti-stacking provision did not bar coverage, the court *240 explained that “[c]ombining the two policies to yield the single coverage . . . would permit Aetna, without notice to the policy owners, to avoid covering one of the two risks it insured and thus to obtain a windfall of one of the two premiums paid to it.” Id. at 222.
Here, while Howard purchased both policies, they were purchased on different dates and intended to ensure separate legal entities for different insurance interests. The auto policy was issued to T.S. as an “Oil and Gasoline Distributor”; the garage policy was issued to Trans-Spec as a “Repair Shop — Non Dealer." The auto policy covered the truck while the garage policy covered, among other things, “garage operations.” The auto policy was purchased on July 20, 2001; the garage policy was purchased on January 10, 2002. Both T.S. and Trans-Spec paid the respective premiums for the respective coverage provided under each policy. That Trans-Spec “was a named insured under both policies” is “inconsequential” because there is no language in the provision “which calls for merging two policies issued to different entities merely because the two entities have a named insured in common.” Aetna, 44 Mass.App.Ct. at 221. In light of the fact that Providence Washington issued one policy to T.S. and one policy to Trans-Spec, this Court concludes that the anti-stacking provision does not bar coverage in this case.
III. ATTORNEYS FEES AND COSTS
Both parties agree that Providence Washington provided Trans-Spec with a defense in the settlement negotiations under the auto policy. The final issue, therefore, is whether Providence Washington’s failure to defend under the garage policy entitles United National, subro-gated to the rights of Trans-Spec, to its attorneys fees and costs. If United National were the “insured” (i.e., Trans-Spec), then it would likely be entitled to attorneys fees and costs in light of this Court’s conclusion that Providence Washington owed Trans-Spec coverage, and thus a duty to defend, under the garage policy. See Wilkinson v. Citation Insurance Co., 447 Mass. 663, 664 (2006) (allowing insureds to recover attorneys fees paid in establishing insurer’s duty to defend). The twist here is the fact that United National as subrogee, not Trans-Spec, is seeking its attorneys fees and costs.
In Massachusetts, courts generally follow the “American Rule” which “prohibit(s) successful litigants from recovering their attorneys fees and expenses except in a very limited class of cases.” Preferred Mutual Insurance Co. v. Gamache, 426 Mass. 93, 95 (1997). The Gamache exception to the “American Rule” “allows those who purchase insurance contracts containing a duty to defend provision to recover their attorneys fees when they must resort to litigation against their insurer to enforce that duty.” Wilkinson v. Citation Insurance Co., 447 Mass. 663, 664 (2006). The Gamache exception does not include “duty to indemnify” litigation and is “expressly limit[ed] to duty to defend litigation.” Id. at 669. The rationale for the Gamache exception derives from the courts’ acknowl-edgement of the potentially significant hardship foisted on the insured by an insurer’s refusal to provide a defense. Rubenstein v. Royal Insurance Co. of America, 429 Mass. 355, 357 (1999). “[T]he liability insurer’s duty of defense is so extensive and the burden on the insured of a breach of that duty is likely to be so heavy . . . [that] the insurer should not enjoy the usual freedom to litigate without concern about the possibility of having to pay the [insured’s] attorneys fees.” Gamache, 96 Mass. at 96 (citation omitted).
Based on a review of Gamache and its progeny, this Court declines to allow recovery of attorneys fees and costs in this equitable subrogation case. As stated above, the rationale for the Gamache “duty to defend” exception is to spare an insured from being burdened by the potentially prohibitive costs of litigation necessary to establish the insurer’s duty to defend. That rationale is absent here where Trans-Spec bore none of the attorneys fees or costs of establishing that the garage policy provided coverage. United National bore the costs of establishing Providence Washington’s duty to defend Trans-Spec under the garage policy, but United National is not entitled to any direct action against Providence Washington. See Hartford Casualty Insurance Co., 417 Mass. at 124 n.7. As such, United National is not entitled to attorneys fees and costs.
ORDER
For the foregoing reasons, it is hereby ORDEFIED that United National’s motion for summary judgment is ALLOWED IN PART and DENIED IN PART and Providence Washington’s cross motion for summary judgment is DENIED IN PART and ALLOWED IN PART.

 Patricia L. Cadrin, Administratrix of the Estate of David P. Cadrin v. Trans-Spec Truck Service, Inc. et al., Worcester Superior Court, Docket No. 02-CV-9308-B.

 Policy No. MWC0103669 (effective dates: July 12, 2001 to July 12, 2002). T.S. is the named insured on the auto policy and the policy limit is $1 million. Trans-Spec is listed as an additional insured on the auto policy.

 Policy No. MJC0104601 (effective dates: December 10, 2001 to December 10, 2002). Trans-Spec is the named insured on the garage policy and the policy limit is $1 million.

 Policy No. XTP-63011 (effective dates: March 7, 2001 to March 7, 2002). Both T.S. and Trans-Spec are named insureds and the policy limit is $10 million.

 There appears to be a typographical error in the insurance policy because the policy lists an insured location at “21 Escow Road, Woburn, Massachusetts” and an insured location at “21 Escow Road, Worcester, Massachusetts.” See Garage Policy, Abate Aff., Exhibit 1, Bates No. 2. The proper spelling appears to be “Eskow” rather than “Escow” with respect to the proper location in Worcester. Moreover, a map search of Wobum reveals no road under either name.

 In the plaintiffs Rule 9A(b)(5) statement of material facts, the plaintiff asserts, and the defendant does not dispute, that the settlement occurred on November 2, 2005. The Settlement Agreement contained in the record, however, appears to have been executed on January 19, 2005. This apparent discrepancy, however, is immaterial to the resolution of the legal issues.